UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JOSEPH W. KOFOED, | Case No.: 3:11-CV-444-AC |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| JOHN KROGER, Attorney General/Oregon; JOHN KITZHABER, Governor/Oregon; LINDA IGNOWSKI, Oregon Liquor Control Commission Director/Oregon, | |
| Defendants. | |

_____

ACOSTA, Magistrate Judge:

*Introduction*

Joseph W. Kofoed ("Kofoed"), who is appearing *pro se*, filed this action against defendants

John Kroger, Attorney General of the State of Oregon ("Kroger"); John Kitzhaber, Governor of the

State of Oregon ("Kitzhaber"); and Linda Ignowski, Director of the Oregon Liquor Control

Commission ("Ignowski")(collectively "Defendants"), alleging Defendants violated his constitutional rights under the Commerce Clause and to due process under the Fourteenth Amendment when, on two separate occasions, Denny's restaurant refused to accept his Utah Department of Public Safety Concealed Firearm Permit ("Utah Permit") as valid proof of age and asked him to leave the lounge area of the restaurant. Kofoed seeks a permanent injunction prohibiting Defendants from "continuing to violate any of the Oregon Revised Statutes through non-authorized and non-legislative amendments or changes or any way", civil penalties, and all costs associated with this action. (Compl. at 10-11.) Defendants move to dismiss Kofoed's complaint asserting that Kofoed is unable to state a valid claim against them. The court finds that Kofoed's request for an injunction is moot, that Defendants are entitled to Eleventh Amendment immunity on claims for money damages against them in their official capacities, and that Kofoed is unable to state a claim against them in their individual capacities because they did not affirmatively act and they did not violate any constitutional or federal right. Accordingly, Defendants' motion to dismiss should be granted.

*Background*

In his First Amended Complaint filed August 29, 2011 ( "Complaint"), Kofoed alleges that he is a sixty-four year old resident of Woodland, Washington, who served in Vietnam as a member of the United States Marine Corps. (Compl. at 2.) On two separate occasions in June 2009, Kofoed attempted to order a cup of coffee in the lounge area of the Denny's restaurant at Jantzen Beach located in Portland, Oregon. (Compl. at 2, 5.) Both times, a restaurant employee asked to see Kofoed's identification and Kofoed produced his Utah Permit. (Compl. at 2-3.) On both occasions, the restaurant employee refused to accept the Utah Permit as valid identification and asked Kofoed

to leave the lounge area of the restaurant.  (Compl. at 3.)

Kofoed alleges that the Utah Permit meets the requirements of OR. REV. STAT. 471.130(1)(e). (Compl. at 3.)  OR. REV. STAT. 471.130(1) provides that:

> (1)  All licensees and permittees of the Oregon Liquor Control Commission, before selling or serving alcoholic liquor to any person about whom there is any reasonable doubt of the persons's having reached 21 years of age, shall require such person to produce one of the following pieces of identification:
>
> (a) The person's passport.
>
> (b) The person's motor vehicle operator's license, whether issued in this state or by any other state, so long as the license has a picture of the person.
>
> (c) An identification card issued under ORS 807.400.
>
> (d) A United States military identification card.
>
> (e) Any other identification card issued by a state that bears a picture of the person, the name of the person, the person's date of birth and a physical description of the person.

He further alleges that the Oregon Liquor Control Commission (the "OLCC") admitted that the Utah Permit was an acceptable form of identification under the statute in a letter dated February 10, 2011. (Compl. at 3.)  However, the OLCC allegedly had "non-legislatively amended state law" to require only state-issued motor vehicle licenses, rather than any state-issued identification card, and published the new law on bulletins and brochures, both on paper and on the internet, resulting in the rejection of the Utah Permit by the restaurant employees.  (Compl. at 3-4.)  Kofoed also references an OLCC "mystery policy" that alcohol servers are "not required to accept any form of identification."  (Compl. at 4.)  Kofoed asserts that the "non-legislative" amendment of state law violated his due process rights and that his inability to purchase a cup of coffee in a restaurant lounge in Oregon violated the Commerce Clause.  (Compl. at  5.)

In their motion to dismiss, Defendants ask the court to take judicial notice of OR. ADMIN. R. 845-006-0335(1), which sets forth the obligations of OLCC licensees and permittees to verify the age of individuals in areas prohibited to minors:

> (a) ORS 471.130 requires a licensee or permittee to verify the age of a person who wants to buy or be served alcoholic beverages when there is "any reasonable doubt" that the person is at least 21 years old. The Commission requires a licensee or permittee to verify the age of anyone who wants to drink alcoholic beverages, or is in an area prohibited to minors, if there is a reasonable doubt that the person is at least 21 years old. "Reasonable doubt" exists if the person appears to be under the age of 26;
>
> (b) Whenever a licensee or permittee verifies age, he/she must verify it as ORS 471.130 requires (statement of age card or the specified items of identification) and must reject any obviously altered document or one which obviously does not identify the person offering it;
>
> (c) Licensees must require all their employees who sell, serve, oversee or control the sale or service of alcoholic beverages to verify age as subsection (a) of this section requires.

Defendants then explain that in June 2009, OLCC licensees and permittess were using signs provided to them by the OLCC indicating that the identification acceptable under Oregon law was "[A] valid DMV ID card with photo, name, date of birth, & physical description from any state." (Defs.' Mem. in Supp. of Mot. to Dismiss Pl.'s First Am. Compl. ("Defs.' Mem." at 4.)) Defendants represent that "[b]ecause the statute and administrative rules are in agreement, OLCC has simply changed the sign used by OLCC licensees to determine acceptable identification and the first distribution of signs is expected to occur around January 2012." (Defs.' Mem. at 4.) The new sign designates acceptable identification as "[A] valid ID card issued by a state with photo, name, date of birth, & physical description." (Defs.' Mem. at 4.)

/ / / / /

*Legal Standard*

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2)(2011). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* While the court must assume that all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S.662, 129 S. Ct. 1937, 1949 (2009). Additionally, a plaintiff must set forth a plausible claim for relief – a possible claim for relief will not do. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009)(quoting *Iqbal*, 129 S. Ct. at 1949).

In cases involving a plaintiff proceeding *pro se*, the court construes the pleadings liberally and affords the plaintiff the benefits of any doubt. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992)("[F]ederal courts liberally to construe the 'inartful pleadings' of pro se litigants."). In other words, courts hold *pro se* pleadings to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In addition, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *Karim-Panahi*, 839 F.2d at 623-624.

*Discussion*

Defendants move to dismiss on numerous grounds which include mootness, Eleventh Amendment immunity, and failure to state a claim for relief under 42 U.S.C. § 1983.  The court addresses each of these arguments in detail below.

## I.  Mootness

Defendants argue that because the OLCC has corrected the signs provided to its licensees and permittees, and the corrected version complies with OR. REV. STAT. 471.130(1), Kofoed's injury is not likely to occur again and his claims are, therefore, moot.  Kofoed asserts that the "downstream practical effect" of a ruling from this court on his claims will affect his pending lawsuit against Denny's and the use of lounges by the Oregon State Lottery, which "translates into mootness failure."  (Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") at 2.)

In order to have standing under Article III of the Constitution, a plaintiff must satisfy a three-part test: (1) "the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (citations omitted).  Where developments subsequent to the commencement of suit eliminate any possibility of effective relief, Article III's requirement that there be a live case or controversy is called into question.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).  "To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all times, not merely at the time the complaint is filed.'"  *Arizonans for Official English v. Arizona*, 520

U.S. 43, 67 (10997)(quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).  "If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed." *American Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1124 (9th Cir. 1997).  The party seeking to establish mootness bears a heavy burden.  *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1274 (9th Cir. 1998).

"The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted."  *Northwest Envtl. Defense Center v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988).  Or, stated another way, the "central question" is "whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief."  *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005).  The issue is not whether the remedy initially sought by the plaintiff is still available, but "whether there can be *any* effective relief."  *Gordon*, 849 F.2d at 1244-45 (emphasis in original).  "[W]here the violation complained of may have caused continuing harm and where the court can still act to remedy such harm by limiting its future adverse effects, the parties clearly retain a legally cognizable interest in the outcome."  *Id*. at 1245.

Two exceptions to the mootness doctrine exist.  The first exception applies where the issue before the court is capable of repetition yet evades review.  This limited exception applies only to extraordinary circumstances in which: "(1) the duration of the challenged action is too short to be fully litigated before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subject to the same action again.  *American Rivers*, 126 F.3d at 1124 (9th Cir. 1997)(quoting *Alaska Fish and Wildlife Fed'n v. Dunkle*, 829 F.2d 933, 939 (9th Cir. 1987)).  The second exception applies where a defendant has voluntarily ceased the offensive conduct but "despite the apparent demise of

the controversy, its resolution has a reasonable chance of affecting the parties' future relations." *Clark v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990).

The claims asserted in the Complaint derive from Denny's refusal to accept the Utah Permit based on OLCC directives to its licensees and permittees to accept only state-issued motor vehicle licenses, rather than any state-issued identification card, as valid proof of age. The allegations establish that this conduct occurred in the form of publication by the OLCC of signs provided to the licensees and permittees indicating that the only identification acceptable under Oregon law was "[A] valid DMV ID card with photo, name, date of birth, & physical description from any state." The Utah Permit did not qualify as proper identification under this publication even though it qualified as proper identification under the statute and regulations then in effect. Acknowledging the discrepancy between the statute and regulations and its publications, the OLCC is in the process of amending its publications to define proper identification as "[A] valid ID card issued by a state with photo, name, date of birth, & physical description." Based on the allegations of the Complaint, the Utah Permits meets all the requirements of proper identification under the amended publications. Accordingly, the OLCC has corrected its error and informed its licensees and permittees that any state-issued identification which meets the requirements of the statute, including the Utah Permit, may be accepted as valid proof of age. With this correction, Kofoed's request for an injunction directing the OLCC from violating the statute is moot.[1] The OLCC has voluntarily ceased the

---

[1]The court notes that Kofoed has asked for an injunction prohibiting Defendants from violating any Oregon statute. Kofoed has not alleged a violation of any other statute and has failed to establish that he was detrimentally affected by Defendants' violation of any other statute. Therefore, Kofoed lacks standing under Article III to seek an injunction with regard to any statute other than OR. REV. STAT. 471.130(1). Similarly, Kofoed references a "mystery policy" of the OLCC allowing licensees and permittees to not accept any type of identification. Kofoed was not detrimentally affected by this "mystery policy", is not able to establish a causal connection between

offensive conduct and this court is unable to grant effective relief.

Kofoed's claim does not qualify for either exception to the mootness doctrine. The conduct on which Kofoed bases his claim occurred in June 2009, more than two years ago. Clearly, the duration of OLCC's offensive conduct was not too short to prevent the claim from being fully litigated had Kofoed filed this action in 2009. Also, Kofoed has failed to establish that it is likely he will be subject to the same offensive conduct. The OLCC is in the process of changing its publications to comply with the statute and regulations so it is very unlikely that Defendants will be responsible for any future rejections of the Utah Permit as valid proof of age, assuming Kofoed's allegations that the Utah Permit complies with the statutory requirements are accurate. With the OLCC's voluntary amendment of its publications, all future disputes between Defendants and Kofoed on this issue have been reasonably resolved.

Kofoed argues that an injunction from this court prohibiting Defendants from violating the statute will effect his action against Denny's and the use of lounges by the Oregon State Lottery. The only feasible effect a ruling in this action would have on either of these unrelated activities would be the preclusive effect of a finding that Defendants have violated OR. REV. STAT. 471.130(1). However, as Kofoed alleges in the Complaint, Defendants, through the OLCC, have admitted that the Utah Permit should have been accepted as valid proof of age under the statute. Any ruling by the court on this issue would be redundant and is unnecessary to establish the precedent sought by Kofoed.

Kofoed's request for an injunction against Defendants has been rendered moot by the OLCC's voluntary amendment of the publications which directed OLCC licensees and permittees

---

this policy and his injury, and lacks standing to assert a claim based on the policy.

to accept only identification issued by a DMV. Based on Defendants' conduct, the claim before the court is not capable of repetition and thus unlikely to evade review. Nor is there a reasonable chance that the offensive conduct will affect Kofoed's and Defendants' future relations. Kofoed's request for injunctive relief should be dismissed as moot.

## II.  Eleventh Amendment Immunity

In addition to injunctive relief, Kofoed seeks civil penalties in the form of an entitlement. Viewing the complaint in favor of Kofoed, and keeping in mind Kofoed's status as a *pro se* plaintiff, the court construes these allegations as a request for money damages. So read, Kofoed asserts claims against Defendants under 42 U.S.C. § 1983 for violations of his Fourteenth Amendment right to due process of law and his right under the Commerce Clause to be free from discrimination as a result of his status as a Washington resident, and seeks money damages based on such violations. Defendants assert that Kofoed's claims are barred by Eleventh Amendment immunity which protects the states, and their agents, from suits for money damages in federal court.

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Supreme Court has held that the Eleventh Amendment bars a citizen from bringing a suit against his own state in federal court. *Hans v. Louisiana*, 134 U.S. 1, 10 (1890). There are two well-established exceptions to the Eleventh Amendment protection from suit. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985). Congress can abrogate the Eleventh Amendment without the consent of the states in certain instances or a state may waive its immunity by consenting to suit in federal court. *Id*. Both the states and Congress must state their intent to

waive or abrogate Eleventh Amendment immunity with express, unequivocal language. *Id*. at 239-40.

> 42 U.S.C. §1983 provides, in pertinent part, that:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Supreme Court has expressly found that Congress did not abrogate the states' Eleventh Amendment immunity when it enacted § 1983. *Will v. Dept. of State Police*, 491 U.S. 58, 66 (1989). Because Congress intended § 1983 to apply to "persons" and states are not "persons," that statute does not operate to abrogate a state's immunity under the Eleventh Amendment. This immunity extends to state agencies, and state officials acting in their official capacity. *Id* at 71. Similarly, the state of Oregon has not expressly consented to this suit, and there is no Oregon statute which would waive the state's immunity. Therefore, to the extent Kofoed is relying on conduct of Defendants in their official capacities to recover money damages, Defendants are protected by Eleventh Amendment immunity.

In the caption of the Complaint, and again in the body of the Complaint, Kofoed identifies Defendants' in their respective official capacities as Attorney General of Oregon, Governor of Oregon and OLCC Director. Any claim for money damages which rely on Defendants' conduct in these official capacities are barred by the Eleventh Amendment and should be dismissed.

III.  Failure to State a Claim under § 1983

In the first paragraph of the Complaint, Kofoed represents that he is filing the Complaint against the Defendants "individually." Considering these allegations in the light most favorable to

Kofoed, it appears that Kofoed has attempted to state a § 1983 claim for money damages against Defendants in their individual, rather than official, capacities.  Defendants move to dismiss this claim, asserting that Kofoed has failed to allege any affirmative conduct or the violation of any Constitutional or federal right by Defendants.

### A. Absence of Affirmative Conduct

"State officials are not subject to suit under section 1983 unless they play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987).  In order to hold a supervisor liable for the acts of another under § 1983, the plaintiff must prove either: (1) the supervisor participated in or directed the constitutional violations; or (2) the supervisor knew of the constitutional violations and failed to act to prevent them.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Kofoed does not allege that Defendants engaged in any affirmative acts which resulted in the deprivation of his constitutional rights in June 2009.  He merely alleges that the OLCC "non-legislatively amended state law without authority" in publishing its own version of OR. REV. STAT. 471.130(1) and providing it to its licensees and permittees.   The Complaint is void of allegations that Defendants knew of the misstatements of the law found in the publications or that they participated or directed the inaccurate publications.  In the absence of such allegations, Kofoed has failed to state a viable claim under § 1983 and the Complaint should be dismissed on this ground.

### B. Deprivation of a Federal Right

Kofoed alleges that Defendants violated his due process rights when they "non-legislatively amended state law without authority" by publishing its own version of OR. REV. STAT. 471.130(1), and violated his rights under the Commerce Clause by preventing him from enjoying a cup of coffee

in Oregon because of his status as a Washington resident. "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant was acting under color of state law at the time the acts complained of were committed, and that (2) the defendant deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Briley v. California*, 564 F.2d 849, 853 (9th Cir. 1977)(footnote omitted). Defendants argue that the Complaint does not contain facts sufficient to support a violation of a federal right, as required to allege a § 1983 claim, and should be dismissed on this ground as well.

     1.  Commerce Clause

     The Commerce Clause, found in Article I of the Constitution, empowers Congress "[t]o regulate Commerce . . . among the several states." U.S. Const. Art. I, § 8, cl. 3. From this language, the Supreme Court has created a principle known as the "dormant Commerce Clause" which prevents state governments from unjustifiably discriminating against or impeding the free flow of goods from one state to another. *Conversation Force, Inc. v. Manning*, 301 F.3d 985, 991 (9th Cir. 2002)(citing *Gibbons v. Ogden*, 22 U.S. (9 Wheat) 1, 231 (1824)). When a state enacts a law which unduly favors in-state commercial interests over their out-of-state counterparts, that law will "routinely" be found invalid under the dormant Commerce Clause "unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 192 (1994).

     The Commerce Clause does not apply here. Kofoed was allowed to freely move between Washington and Oregon, was not prevented from transporting goods between the states, was not engaged in a commercial enterprise, and was not prevented from ordering and enjoying a cup of coffee in the state of Oregon. The only problem Kofoed faced was that he was not allowed to order

a cup of coffee in the lounge of the Denny's restaurant in Portland, Oregon, because he did not offer identification issued by a state DMV.   Kofoed was not, however, prevented from ordering and enjoying that same cup of coffee in the other areas of the restaurant.

Additionally, the objectionable publications, which he alleges improperly amended OR. REV. STAT. 471.130(1), did not discriminate or differentiate between the states in any way.   The publications indicated that a valid DMV card from *any* state with photo, name, date of birth, & physical description was acceptable identification.   The publications did not limit acceptable identification to that issued by the state of Oregon. Under the requirements of the publications, any identification issued by any state, including Oregon, other than that issued by the DMV, would be unacceptable.   Even an Oregon resident offering a Utah Permit, or any identification issued by an Oregon agency, other the Oregon DMV, would have been presenting unacceptable identification under the publications.   In the absence of discrimination against the flow of goods within the states based on the state from which the goods or individual originated, Kofoed is unable to assert a violation of the Commerce Clause.

### 2.  Fourteenth Amendment

Kofoed's Fourteenth Amendment procedural due process claims rests on his allegations that the OLCC non-legislatively amended OR. REV. STAT. 471.130(1) without authority.   As a result, Kofoed was not allowed to purchase and drink a cup of coffee in a restaurant lounge.   "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972).  To state a claim under § 1983 based on procedural due process violations, a plaintiff must allege: "(1) a liberty or property interest protected by the Constitution;

(2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). While the Supreme Court has interpreted the terms liberty and property interest broadly in the context of the Fourteenth Amendment, it has recognized that "the range of interests protected by procedural due process is not infinite." *Roth*, 408 U.S. at 570.

Liberty interests are not limited to freedom from bodily restraint but also include the right of an individual to "contract, to engage in any of the common occupations of life, to acquire useful knowledge, the marry, establish a home and bring up children, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men." *Roth*, 408 U.S. at 572 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). Kofoed's asserted liberty interest, the right to order and drink coffee in a particular area of a privately-owned restaurant, is not essential to the orderly pursuit of happiness by free men and is not a liberty interest protected by the Fourteenth Amendment.

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already-acquired in specific benefits." *Roth*, 408 U.S. at 576. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id*. at 577. Property interests take many forms, such as an interest in continued receipt of welfare benefits and an interest in continued public employment under the terms of a contract. *Id*. at 576-77. Kofoed's desire to order and drink coffee in a privately owned restaurant lounge was merely that, a desire. He did not have a legitimate claim of entitlement to it. Kofoed is unable to allege a property interest protected by the Fourteenth Amendment.

Kofoed has failed to allege conduct which results in a violation of the Commerce Clause or the Fourteenth Amendment. As such, Kofoed has failed to alleged the deprivation of a right, privilege, or immunity secured by the Constitution or laws of the United States required to support a claim under § 1983. Kofoed claims for money damages against Defendants in their individual capacities should be dismissed.

V. Opportunity to Amend Complaint

In light of Kofoed's *pro se* status, the court must consider whether Kofoed is able to cure the deficiencies identified above by amending his complaint. With regard to the mootness doctrine and the claims against Defendants in their official capacities, it is evident that no amendment will cure the deficiencies and that these claims should be dismissed with prejudice. While the question of whether Kofoed may, after amendment, assert a viable claim against Defendants in their individual capacities is less clear, the court finds that these claims should be dismissed with prejudice as well.

Kitzhaber was inaugurated as Oregon's governor on January 10, 2011, and could not have had any individual involvement in the OLCC's publications in June 2009, the date of Kofoed's alleged injury. Accordingly, even after amendment, Kofoed is unable to state a claim against Kitzhaber individually.

Both Kroger and Ignowski were serving in their respective positions as Oregon's Attorney General and Director of Regulatory Services for the OLCC, in June 2009, and, arguably, could have participated in the publication of the offensive publications. Kroger, as Attorney General, had no direct supervision over the OLCC employees who created the publications and would not generally have been in a position to be aware of or participate in the publications. While it is unlikely, it is not impossible for Kroger to have either directed, participated in, or been aware of the offensive

publications.  Similarly, Ignowski was employed by the OLCC in the position of Director of Regulatory Services and reasonably could have directed, participated in, or been aware of the offensive publications.  Therefore, the court finds that Kofoed could feasibly amend his complaint and allege affirmative action on behalf of both Kroger and Ignowski.  However, even if such amendment was accomplished, it would not overcome the requirement that Kofoed allege the deprivation of a Constitutional or federal right as required by § 1983.  Based on the facts alleged in the Complaint, it is clear that Kofoed is unable to allege a violation of the Commerce Clause or the Fourteenth Amendment.  Accordingly, Kofeod is unable to cure the deficiencies of the Complaint and this action should be dismissed with prejudice.

<em>Conclusion</em>

Defendants' motion (#22) to dismiss should be GRANTED and the Complaint should be dismissed with prejudice.

Scheduling Order

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due **February 6, 2012**.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 20th day of January, 2012.


_____<br>
/s/ John V. Acosta<br>
JOHN V. ACOSTA<br>
United States Magistrate Judge